HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THURSTON MYERS,

    Plaintiff,

  v.

SERGEANT THOMAS J. BROOKS, SERGEANT JEFFREY MASON, JOHN & JANE DOES 1 – 34; and the CITY OF LYNNWOOD, a municipal corporation,

    Defendants.

Case No. 2:18-cv-01043-RAJ

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter is before the Court on Defendants' motion for summary judgment ("Motion"). Dkt. # 26. For the reasons below, the Court **GRANTS** the Motion.

## II. BACKGROUND

Plaintiff Thurston Myers is a Lynnwood, Washington resident who brings claims against the City of Lynnwood and two members of the Lynnwood Police Department, Sergeant Thomas J. Brooks and Detective Jeffrey Mason. Dkt. # 32-1 at 4. At the time of the events underlying the Complaint, Plaintiff claims to have had medical authorization to grow and possess marijuana at his property under former Washington statute RCW 69.51A.085(d). Subject to certain conditions, qualifying patients under the statute could create and participate in "collective gardens" to produce, process, transport, and deliver marijuana for medical use. A collective garden could contain no more than ten patients at

ORDER – 1

any time; could contain not more than fifteen plants per patient up to a total of forty-five plants; and could not contain more than twenty-four ounces of useable marijuana per patient up to a total of seventy-two ounces of useable marijuana. RCW 69.51A.085(d) (eff. through July 1, 2016).

On July 29, 2014, a Snohomish County judge found probable cause that the crime of unlawful manufacturing of a controlled substance was occurring at Plaintiff's residence and issued a warrant. Dkt. # 29-1. The next day, detectives with the South Snohomish County Narcotics Task Force (the "Task Force") served the warrant on Plaintiff and confiscated marijuana and other property in accordance with the warrant. Dkt. # 29-2. The Task Force located a growing operation in what appeared to be shipping containers, although Plaintiff refers to them as "container buildings." *See* Dkt. # 33. Plaintiff told the Task Force that he was authorized to grow and keep a "collective garden" on his property. Dkt. # 29-2 at 3. Defendant Mason informed Plaintiff that there were only three people with valid medical authorization at the residence, that each card hold could possess fifteen marijuana plants, and that the remainder would be seized. *Id.* The Task Force seized approximately 395 marijuana plants from the shipping containers. *Id.* The Snohomish County Prosecuting Attorney's Office subsequently charged Plaintiff with the crime of manufacturing a controlled substance. Dkt. # 31-1.

Approximately one year later, Lynnwood Detective Paul Bryan applied for a search warrant for Plaintiff's residence. The affidavit that he filed in support detailed facts of an on-going investigation into the marijuana grow on Plaintiff's property. Of note, Bryan detailed Plaintiff's past history of unlawful marijuana growing, electrical records for Plaintiff's property showing excessive power consumption consistent with an unlawful marijuana growing operation, knowledge of fans and humming noises coming from Plaintiff's shipping containers, and complaints from neighbors about the smell of marijuana coming from Plaintiff's property. Dkt. # 28-1 at 6-8. On July 21, 2015, a Snohomish County judge found probable cause that the crime of unlawful manufacturing

ORDER – 2

of a controlled substance was occurring at Plaintiff's residence and authorized a search of Plaintiff's "two-story split entry wood sided residence" and "shipping containers" located on the east side of the residence. Dkt. # 29-1. The warrant authorized the seizure of "[a]ll growing marijuana plants or those in excess of the medical cannabis provisions if a valid medical authorization exists"; it also authorized the seizure of "marijuana growing equipment," "drug paraphernalia" and "any other items used to grow marijuana," unless valid medical authorization existed. Dkt. # 29-1.

On July 22, 2015, Defendants executed the warrant and provided a copy to Plaintiff. Dkt. # 28-2. As before, Plaintiff stated that he was entitled to grow a "collective garden" on his property, but this time claimed to have a provider license which permitted him to grow for multiple people at a time. *Id.* at 5. Defendants seized over 200 marijuana plants, shake marijuana totaling 275.2 pounds, growing equipment, lights, marijuana license documentation, and the two shipping containers. *Id.* Defendants left 45 marijuana plants which they believed Plaintiff was authorized to keep per state law. *Id.* Defendant Brooks took custody of Plaintiff and transported him to jail. Once at the jail, Plaintiff received a Notice of Seizure and Intended Forfeiture, which advised him of his right to a hearing regarding the seized property. Dkt. # 28-2; Dkt. # 31-2 at 41.

Plaintiff claims that the seizure of the containers, or his "container buildings," as well as his arrest violate the Fourth and Fourteenth Amendments. Dkt. # 1. Plaintiff also brings a claim against the City of Lynnwood (the "City"), alleging that municipal policy makers exhibited deliberate indifference to his constitutional rights and failed to provide adequate training on "collective garden" marijuana laws. *Id.*

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving

ORDER – 3

party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### IV.  DISCUSSION

Plaintiff claims that Defendants breached the Fourth and Fourteenth Amendments by unlawfully seizing the containers, or "container buildings" in his backyard as well as all the contents connected to and contained within them. Dkt. # 1 at 9. In support of his claim, Plaintiff argues that the "container buildings" are real property under Washington law and

ORDER – 4

that the search warrant relied upon did not authorize Defendants to seize real property. Dkt. # 33 at 7-8.

### I. Seizure of Plaintiff's Property

### A. Fourth Amendment Analysis

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004). Accordingly, the Fourth Amendment requires law enforcement officers to obtain a warrant that describes with particularity the place to be searched and the person or things to be seized. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). "While a search warrant must describe items to be seized with particularity sufficient to prevent a general, exploratory rummaging in a person's belongings, it need only be reasonably specific, rather than elaborately detailed." *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996) (internal quotation marks and citations omitted). When law enforcement officers act unreasonably when executing a search warrant, they violate the Fourth Amendment. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 974–75 (9th Cir. 2005) (explaining that an officer generally does not have the power to seize anything not specified in the warrant, but retains discretion over the execution of the search).

The warrant here found probable cause of unlawful manufacturing of a controlled substance and authorized a search of Plaintiff's residence. Dkt. # 31-8 (describing the premises as a tan-colored "two-story split entry wood sided residence" and "shipping containers" located on the east side of the residence). The warrant also authorized seizure of "[a]ll growing marijuana plants or those in excess of the medical cannabis provisions if a valid medical authorization exists"; it also authorized the seizure of "marijuana growing equipment," "drug paraphernalia" and "any other items used to grow marijuana," unless valid medical authorization existed. Dkt. # 29-1. The affidavit offered in support of the

ORDER – 5

warrant detailed Plaintiff's past history of unlawful marijuana growing, electrical records for Plaintiff's property showing excessive power consumption consistent with an unlawful marijuana growing operation, knowledge of fans and humming noises coming from Plaintiff's shipping containers, and complaints regarding the smell of marijuana coming from Plaintiff's property. Dkt. # 28-1 at 6-8. The Court finds that the search warrant describes with sufficient particularity the premises to be searched and the items to be seized. *U.S. v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004).

In finding the search warrant valid, the Court turns to Plaintiff's contention that Defendants exceeded the scope of the warrant by seizing his "container buildings." "A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant." *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) (quoting *United States v. Penn*, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (en banc)). Plaintiff claims that he was legally operating a collective garden, pursuant to RCW 69.51A.210 when Defendants executed the warrant at his residence in July 2015. Dkt. # 33 at 9. This could not be the case, however, as RCW 69.51A.210 did not become effective until July 1, 2016. The Washington law in effect at the time, RCW 69.51A.085, states that "[a] collective garden may contain no more than fifteen plants per patient up to a total of forty-five plants."[1] It is undisputed that Defendants seized 275.2 pounds of "shake" marijuana and over 200 marijuana plants—well beyond what would have been permitted for a legal "collective garden" under Washington law. Defendants did not act unreasonably in executing the warrant by seizing the "containers buildings," which, as a matter of Washington law, may constitute drug paraphernalia. *See Smith v. Mount*, 726 P.2d 474, 478 (Wash. App. 1986) (explaining that a 10 by 48 foot building structure with no windows, but equipped with built-in fans, humidifiers and artificial growing lights was "drug paraphernalia" despite

---

[1] To the extent, Plaintiff attempts to create disputed issues via its expert witness, those arguments will not be considered. The Court **GRANTS** Defendants' motion to strike for the reasons stated therein. *See* Dkt. # 36.

ORDER – 6

being appurtenant to real property). This is true even viewing the facts in a light most reasonable to Plaintiff. *Reeves*, 530 U.S. at 150-51. Accordingly, the Court **GRANTS** Defendants' Motion as to this cause of action.

### B. Fourteenth Amendment Analysis

To the extent Plaintiff also alleges a due process claim, that too fails as a matter of law. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court held that deprivations of property by a state employee do not constitute violations of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson*, 468 U.S. at 533. The important inquiry is not whether Plaintiff took advantage of the post-deprivation remedy, but whether the state offered such a remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981). Here, even if Defendants wrongly seized Plaintiff's "shipping containers," no liability would ensue if the state offered a meaningful post-deprivation remedy. It is undisputed that the City served Plaintiff with a Notice of Seizure and Intended Forfeiture, which advised him of his right to a hearing regarding the seized property. Dkt. # 32-1. The Notice explained that Plaintiff was required to notify the City of Lynnwood Police Department by certified mail within 45 days of his claim to ownership or right to possession of the items taken, including his containers. *Id.* Because a meaningful postdeprivation remedy was provided, the Court **GRANTS** Defendants' Motion as to this cause of action.

### II. Seizure of Plaintiff (False Arrest)

To succeed on a Section 1983 claim based on false arrest, a plaintiff must show that the defendant lacked probable cause for the arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). This standard is met when there is a "fair probability" that a crime has been

ORDER – 7

committed.  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). " "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).

Plaintiff argues that the facts demonstrate a lack of probable cause because he was legally operating a collective garden and he claims to have provided Defendants with identification for each member of the collective gardens. Dkt. # 33.  The Washington State Supreme Court has opined that the relevant state law only provides an affirmative defense for the medical use of cannabis.  *State v. Reis*, 351 P.3d 127 (Wash. 2015).  An affirmative defense does not defeat probable cause.  *Id.*; *State v. Fry*, 228 P.3d 1 (2010).  As noted above, Defendants possessed sufficient facts to believe that Plaintiff was unlawfully manufacturing a controlled substance.  Therefore, the Court **GRANTS** Defendants' Motion as to the false arrest claim.

### III. Qualified Immunity

Even if a constitutional violation occurred, the officers claim that they are entitled to qualified immunity.  Dkt. # 25 at 1.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding whether qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

The Court agrees with the Defendants that several reasons support finding qualified immunity applies here.  First, with respect to the alleged Fourth Amendment violation for seizing Plaintiff's "container buildings," the officers acted pursuant to a valid warrant.  *See, e.g.*, *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991) ("A police officer generally

ORDER – 8

has qualified immunity for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant."). The warrant itself authorized the seizure of "[a]ll growing marijuana plants or those in excess of the medical cannabis provisions if a valid medical authorization exists" as well as "marijuana growing equipment," "drug paraphernalia" and "any other items used to grow marijuana," unless valid medical authorization existed. Dkt. # 29-1. It was clear that "container buildings" served no other purpose other than to grow marijuana. *See* Dkt. # 27-2. Moreover, none of the facts show that Plaintiff had a clearly established federal constitutional right violated by seizure of the "container buildings." And to the extent Plaintiff claims that Defendants violated state law in seizing his marijuana, he has no recourse by way of the U.S. Constitution or a federally-created statute. *See Sweaney v. Ada County, Idaho*, 119 F.3d 1385 (9th Cir. 1997).

As for Plaintiff's claim of false arrest, the facts demonstrate probable cause to arrest Plaintiff. Having seized 275.2 pounds of "shake" marijuana and over 200 marijuana plants, well beyond the "collective garden" limit, Defendants possessed sufficient facts to believe that Plaintiff was unlawfully manufacturing a controlled substance. As such, there is no dispute as to whether Defendants' conduct violated his Fourth Amendment right. It did not. Accordingly, the Court **GRANTS** summary judgment on Defendant Officers' claim for qualified immunity.

**IV.   *Monell* claim**

A municipality can be liable under section 1983 if an official policy, custom, or practice directly caused the violation of an individual's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To succeed on a *Monell* claim, a plaintiff must establish that (1) the law enforcement officers acted under color of law; (2) the officers' actions deprived the plaintiff if his/her rights as afforded by the Constitution; and (3) the officers acted pursuant to an official policy or longstanding practice or custom. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Because no constitutional violation occurred, Plaintiff's *Monell* claim fails as a matter of law. *Monell*,

ORDER – 9

436 U.S. at 692.

But even assuming a constitutional violation, Plaintiff's claim would still fail. Specifically, he points to no government policy in support of a *Monell* claim. Absent a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). He fails to do this as well. Instead, Plaintiff argues that the Lynnwood City Council had been debating a ban on the use of shipping containers as accessory building on residential lots and that Plaintiff's property was specifically discussed. Dkt. # 33 at 21-22. This fails to constitute a longstanding practice and otherwise ignores the valid search warrant used to search and seize Plaintiff's property.

Plaintiff argues separately that the City is liable based on an alleged failure to adequately train its officers on the differences between illegal narcotics trafficking and a lawful marijuana "collective garden." *Id*. at 24. To establish *Monell* liability on a theory of failure to train, a plaintiff must not only show that the training was inadequate, but that the city was deliberately indifferent to individuals' constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The fact that further training might have prevented any violation is insufficient—instead, the choice not to train must be deliberate. *See id*. at 392. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (alteration omitted) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)). It may be evidenced where "the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390. There is nothing in the record to support this theory of liability, such as a pattern of similar alleged constitutional violations or any evidence of the training received by the City's police officers.

Lastly, Plaintiff claims municipal liability is appropriate because the City's Planning Commission Director ratified a policy outlawing "container buildings" despite the fact that

ORDER – 10

the containers complied with State and local laws. Dkt. # 33. Liability under *Monell* may follow where a policymaker approves a subordinate's unconstitutional decision and the basis for it. *See Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992). This theory of liability as applied here has no merit. Plaintiff has not shown that the City's Planning Commission Director has any authority over the actions of the city's police matters. *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (noting evidence that chief of police was final decisionmaker for city's police matters). In any case, Plaintiff's "container buildings" were seized pursuant to a warrant related to unlawful manufacturing of a controlled substance, not because they were banned under a City ordinance. And as stated above, Defendants did not act unconstitutionally in seizing the property.

For the reasons stated, Plaintiff's *Monell* claim fails as a matter of law and Defendants' Motion is **GRANTED** as to this cause of action.

### V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion. Dkt. # 26.

DATED this 13th day of September, 2019.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 11